ATTORNEYS FOR PETITIONER:
**PETER J. AGOSTINO**
**M. CATHERINE FANELLO**
ANDERSON AGOSTINO & KELLER, P.C.
South Bend, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**EVAN W. BARTEL**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

_____

# IN THE
# INDIANA TAX COURT

**FILED**

Nov 12 2015, 3:00 pm

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

_____

| | |
|---|---|
| UNION TOWNSHIP, ST. JOSEPH COUNTY, )<br><br>Petitioner, )<br><br>v. )<br><br>STATE OF INDIANA, DEPARTMENT OF LOCAL GOVERNMENT FINANCE, )<br><br>Respondent. ) | Cause No. 71T10-1301-TA-00002 |

_____

ON APPEAL FROM TWO FINAL DETERMINATIONS OF
THE DEPARTMENT OF LOCAL GOVERNMENT FINANCE

**FOR PUBLICATION**
**November 12, 2015**

WENTWORTH, J.

Union Township challenges the two final determinations of the Department of Local Government Finance (DLGF) that denied the two excess property tax levy appeals it made in 2012.  Upon review, the Court reverses those final determinations.

**FACTS AND PROCEDURAL HISTORY**

Union Township is a civil taxing unit located in St. Joseph County, Indiana.  In July

of 2012, Union Township, together with the Union-Lakeville Fire Protection Territory, requested the DLGF's permission to impose an excess property tax levy. (See Cert. Admin. R. at 14-17.) Their appeal documentation asserted that due to a $40 million "error" in calculating Union Township's 2010 net assessed valuation, they each suffered a property tax revenue shortfall in 2011. (See Cert. Admin. R. at 15.) More specifically, they explained that the error was the result of the DLGF certifying Union Township's 2011 budget based on a net assessed valuation of $159,424,430, but St. Joseph County subsequently issuing the tax bills using a lower net assessed valuation of $119,968,732. (See Cert. Admin. R. at 1, 14.) Union Township and the Union-Lakeville Fire Protection Territory therefore requested the DLGF to "increas[e] the current [net assessed valuation] by at least $40,000,000 and [] allow[] a levy for 2012 payable 2013 sufficient to make up for the cumulative effect of th[at] error[]." (Cert. Admin. R. at 16.)

On October 16, 2012, Union Township submitted a second request for the DLGF's permission to impose an excess levy. (See Cert. Admin. R. at 20.) This second appeal again identified the $40 million error as the cause of a property tax revenue shortfall in 2011; it specifically sought a levy increase in the amount of $51,929.[1] (See Cert. Admin. R. at 24, 26-27.)

On December 7, 2012, the DLGF issued two final determinations that denied both excess levy appeals. (Cert. Admin. R. at 71-74.) On January 8, 2013, Union Township

---

[1] Presumably, Union Township submitted its second excess levy appeal because it had not yet received a final determination with respect to the first. (See, e.g., Cert. Admin. R. at 17.) In early November of 2012, the DLGF indicated to Union Township that it had never received the first excess levy appeal; Union Township resubmitted the first excess levy appeal to DLGF via email on November 20, 2012. (See Cert. Admin. R. at 87-97.)

initiated an original tax appeal. The Court heard oral argument on September 11, 2013 at the University of Notre Dame Law School.[2,3] Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The party seeking to overturn a DLGF final determination bears the burden of demonstrating its invalidity. See Brown v. Dep't of Local Gov't Fin., 989 N.E.2d 386, 388 (Ind. Tax Ct. 2013). This Court will reverse a DLGF final determination if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or contrary to law. See id.

## LAW

Local government units pay their operating costs and expenditures, in part, through the collection of property taxes. Consequently, each unit is required, annually, to formulate an estimated budget, proposed tax levy,[4] and proposed tax rates[5] for the ensuing year. See generally IND. CODE §§ 6-1.1-17-3, -5 (2010) (amended 2012).

In order to make these formulations, each unit relies on information it receives from

---

[2] At the same time, the Court also conducted a hearing on the DLGF's Motion to Dismiss Union Township's original tax appeal. In an opinion issued concurrently with this one, the Court has denied the DLGF's Motion. See Union Twp., St. Joseph Cnty. v. State of Indiana, Dep't of Local Gov't Fin., Cause No. 71T10-1301-TA-00002, slip op. at 6 (Ind. Tax Ct. Nov. 12, 2015).

[3] The Court wishes to thank the staff and students at the University of Notre Dame Law School for hosting the oral argument.

[4] Property taxes in Indiana are budget-driven; the term "levy," therefore, describes the aggregate dollar amount of revenue needed – and subsequently imposed through property taxes – in order to fund a given operation of local government. See, e.g., U.S. Steel Corp. v. Lake Cnty. Prop. Tax Assessment Bd. of Appeals, 785 N.E.2d 1209, 1212 (Ind. Tax Ct. 2003), rev'd in part on other grounds, 820 N.E.2d 1237 (Ind. 2005).

[5] In a budget-driven property tax system, tax rates are mathematical results. Id. In other words, once a budget is agreed upon, the amount of the budget is divided by the taxing unit's assessed value; the resulting quotient is the tax rate. Id.

its county auditor regarding the assessed valuation of property within its taxing district and the resulting estimated tax collection.  See generally IND. CODE § 6-1.1-17-1(a), (c) (2010) (amended 2012).  More specifically, the units rely on a certified statement, prepared and distributed by the county auditor no later than August 1 of each year, containing:

> (1) information concerning the assessed valuation in the political subdivision for the next calendar year;
>
> (2) an estimate of the taxes to be distributed to the political subdivision during the last six (6) months of the current calendar year;
>
> (3) the current assessed valuation as shown on the abstract of charges;
>
> (4) the average growth in assessed valuation in the political subdivision over the preceding three (3) budget years, adjusted according to procedures established by the [DLGF] to account for reassessment under IC 6-1.1-4-4 or IC 6-1.1-4-4.2;
>
> (5) the amount of the political subdivision's net assessed valuation reduction determined under section 0.5(d) of this chapter;
>
> (6) for counties with taxing units that cross into or intersect with other counties, the assessed valuation as shown on the most current abstract of property; and
>
> (7) any other information at the disposal of the county auditor that might affect the assessed value used in the budget adoption process.

I.C. § 6-1.1-17-1(a).  The county auditor must also provide a copy of this statement to the DLGF.  I.C. § 6-1.1-17-1(a).

A unit is then required to conduct a series of public hearings on its proposed budget, tax levy, and tax rates for the ensuing year.  See, e.g., I.C. §§ 6-1.1-17-3, -5, IND. CODE § 6-1.1-17-13 (2010).  The unit then forwards its proposed budget package to the DLGF for its review and "certification" (i.e., approval).  See IND. CODE § 6-1.1-17-16 (2010)

4

(amended 2012).

## ANALYSIS

Union Township contends that the DLGF erred in denying its two excess levy appeals. Specifically, it asserts that both of the DLGF's final determinations must be reversed because they are arbitrary, capricious, an abuse of discretion, and not in accordance with the law. (See generally Pet'r Br. at 6-7.)

### I.

As previously indicated, Union Township submitted its first excess levy appeal with the Union-Lakeville Fire Protection Territory. (See Cert. Admin. R. at 14-17.) Their appeal documentation explained that although they formulated their budgets based on the St. Joseph County Auditor's certified statement that the county's net assessed valuation was $159,424,430, the tax bills were subsequently issued using a net assessed valuation of only $119,968,732. (See Cert. Admin. R. at 1-2, 14-16.) This $40 million "error" resulted in a property tax revenue shortfall in 2011. (See Cert. Admin. R. at 1-2, 15.) Union Township and the Union-Lakeville Fire Protection Territory therefore requested the DLGF to "increas[e] the current [net assessed valuation] by at least $40,000,000 and [] allow[] a levy for 2012 payable 2013 sufficient to make up for the cumulative effect of th[at] error[]." (Cert. Admin. R. at 16.)

In its final determination, the DLGF denied this excess levy appeal for three alternative reasons. First, the DLGF stated that because Union Township failed to present its information using the DLGF's "prescribed appeal template," it failed to present the information required by the DLGF under IC 6-1.1-18.5-12. (Cert. Admin. R. at 71.) Second, the DLGF explained that even if Union Township had used the prescribed appeal

5

template, "it failed to substantiate the alleged error." (Cert. Admin. R. at 71.) Finally, the DLGF reasoned that "even if [Union] Township had supplied the required data and demonstrated that an error occurred, [it] failed to request relief . . . with sufficient specificity." (Cert. Admin. R. at 72.)

**A.**

Indiana Code § 6-1.1-18.5-12 not only establishes the parameters by which Union Township was to initiate its excess levy appeals, but also sets forth the parameters by which the DLGF was to review those appeals. That statute provides, in relevant part, that:

> (a) Any civil taxing unit that determines that it cannot carry out its governmental functions . . . under the levy limitations imposed by section 3 of this chapter may . . . appeal to the [DLGF] for relief from those levy limitations. In the appeal the civil taxing unit must state that it will be unable to carry out the governmental functions committed to it by law unless it is given the authority that it is petitioning for. The civil taxing unit must support these allegations by reasonably detailed statements of fact.
>
> (b) The [DLGF] shall immediately proceed to the examination and consideration of the merits of the civil taxing unit's appeal.
>
> (c) In considering an appeal, the [DLGF] has the power to conduct hearings, require any officer or member of the appealing civil taxing unit to appear before it, or require any officer or member of the appealing civil taxing unit to provide [it] with any relevant records or books.

IND. CODE § 6-1.1-18.5-12(a)-(c) (2012). Nothing in this statute required Union Township to present its excess levy appeal to the DLGF using a particular form (i.e., "a prescribed appeal template"). But see, e.g., IND. CODE § 6-1.1-17-3 (2010) (mandating that a political subdivision formulate its estimated budget, tax rates, and tax levy "on the form prescribed by the department of local government finance" (emphasis added)). Consequently, the

6

<u>only</u> question to be answered is whether Union Township's first excess levy appeal provided the DLGF with the information it was required to provide by Indiana Code § 6-1.1-18.5-12. <u>See</u> <u>UACC Midwest, Inc. v. Indiana Dep't of State Revenue</u>, 629 N.E.2d 1295, 1298-99 (Ind. Tax Ct. 1994) (explaining that when the use of an administrative agency's "prescribed" form is not mandated by statute, a taxpayer's claim should be considered as long as it timely provides the agency with the information required by the statute).

Indiana Code § 6-1.1-18.5-12 required Union Township to "state that it w[ould] be unable to carry out the governmental functions committed to it by law unless it [was] given the authority [to impose an excess levy]" and "support [its] allegations by reasonably detailed statements of fact." <u>See</u> I.C. § 6-1.1-18.5-12(a). The certified record in this case demonstrates that when Union Township presented its first excess levy appeal to the DLGF, it provided documentation establishing that:

1) it formulated its 2011 budget package using the St. Joseph County Auditor's certified statement that the county's 2010 net assessed valuation was $159,424,430;

2) the DLGF certified Union Township's 2011 budget using that number;

3) the county's 2010 pay 2011 tax bills were subsequently issued using a lower net assessed valuation of $119,968,732;

4) this error resulted in a $51,992 property tax revenue shortfall in 2011;

5) the Union-Lakeville Fire Protection Territory's financial reserves were completely depleted in 2011;

6) since 2011, Union Township has been utilizing its own financial reserves to cover the Union-Lakeville Fire Protection Territory's operational expenses;

7

7) with the $51,992 shortfall, Union Township's ability to fund its operating budget, let alone that of the Union-Lakeville Fire Protection Territory, was negatively impacted.

(See Cert. Admin. R. at 1-2, 7, 9, 14-16.) Because this information satisfied Union Township's requirements under Indiana Code § 6-1.1-18.5-12(a), the DLGF erred in denying the first excess levy appeal on this basis. See, e.g., Board of Comm'rs v. Vincent, 988 N.E.2d 1280, 1281 (Ind. Tax Ct. 2013) (explaining that a DLGF final determination is arbitrary and capricious if it is "patently unreasonable and is made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion" (internal quotations omitted)).

**B.**

In the alternative, the DLGF stated that it was denying the excess levy appeal because Union Township "failed to substantiate the alleged error." (Cert. Admin. R. at 71.) The DLGF then stated:

> The [DLGF] notes that during the 2010 Pay 2011 cycle, Marshall County certified its net assessed values before St. Joseph County did, resulting in the [DLGF] having to use St. Joseph County's previous year's abstract assessed value to issue the [Union] Township's budget in a timely manner. This action was based on . . . IC 6-1.1-17-1[(a)(6)] requiring the certified statement from each county auditor . . . to contain "for counties with taxing units that cross into or intersect with other counties, the assessed valuation as shown on the most current abstract of the property." This [provision i]s intended to address situations where a county has submitted its assessed values to the [DLGF] but a neighboring county sharing a cross-county taxing unit has failed to submit [its] assessed values[.]

(Cert. Admin. R. at 72 (footnote added).) The DLGF's purported "rationale," however, fails on at least two grounds.

First, Indiana Code § 6-1.1-17-1(a)(6) has nothing to do with the DLGF's authority to "issue" (i.e., certify) budgets. Indeed, Indiana Code § 6-1.1-17-1(a)(6) merely required

8

the St. Joseph County Auditor to include in its August 1 certified statement to Union Township the assessed valuation of all property located in intersecting Marshall County taxing units "as shown on the most current abstract of property[.]"  See I.C. § 6-1.1-17-1(a)(6).  The inclusion of this data in the certified statement enabled Union Township's fiscal officers to base their budget, tax rate, and tax levy formulations using the assessed valuation of all property that was subject to taxation:  property located in both Union Township, St. Joseph County and Marshall County.  See, e.g., IND. CODE § 6-1.1-17-7 (2010) (providing that when "[t]he boundaries of a political subdivision cross one (1) or more county lines, the budget, tax levy, and tax rate fixed by the political subdivision shall be filed with the county auditor of each affected county" and that "the county which contains the largest portion of the value of property taxable by the political subdivision, as determined from the abstracts of taxable values last filed with the auditor of state, has jurisdiction over the budget, tax rate and tax levy to the same extent as if the property taxable by the political subdivision were wholly within the county").

Second, the DLGF has not answered "the $40 million question:"  whether or not an "error" existed.  Indeed, even assuming that 1) the St. Joseph County Auditor failed to timely certify Union Township's 2010 pay 2011 net assessed valuation and 2) the DLGF was therefore authorized to certify Union Township's 2011 budget using its 2009 pay 2010 net assessed valuation does not explain why the St. Joseph County Auditor subsequently issued the 2010 pay 2011 tax bills using a number that was $40 million lower.[6]

---

[6] The administrative record reveals that Union Township's 2010 budget was certified by the DLGF using a 2009 pay 2010 net assessed valuation of $159,323,137 – a number presumably culled from the appropriate abstracts and certified by the St. Joseph County Auditor.  (See Cert. Admin. R. at 6.)  See also IND. CODE §§ 6-1.1-17-1(a), 6-1.1-17-16 (2010) (amended 2012).

9

It is plausible that the St. Joseph County Auditor amended its certified statement and reduced Union Township's 2010 pay 2011 net assessed valuation sometime <u>after</u> August 1 of 2010. <u>See</u> IND. CODE § 6-1.1-17-0.5 (2010) (amended 2012); I.C. § 6-1.1-17-1(d)-(f) (describing generally the reasons and procedure by which an auditor may amend her certified statement). Nonetheless, the St. Joseph County Auditor would have had to provide notice of the reduction to Union Township, the DLGF, and the general public. I.C. § 6-1.1-17-0.5; I.C. § 6-1.1-17-1(d)-(f). Union Township has indicated that it received no such notice. (<u>See, e.g.</u>, Cert. Admin. R. at 1, 15 ¶ 6; Pet'r Br. at 3, 14-15.) Moreover, the DLGF has failed to direct the Court to any evidence in the administrative record that would support a finding that the St. Joseph County Auditor made such a reduction.[7]

The DLGF's second reason for denying Union Township's first excess levy appeal – that Union Township failed to demonstrate that the $40 million discrepancy was the result of an error – is neither on point nor supported by any evidence. Accordingly, the DLGF erred in denying Union Township's first excess levy appeal on this basis as well. <u>See, e.g.</u>, <u>Perry v. Indiana Dep't of Local Gov't Fin.</u>, 892 N.E.2d 1281, 1282-83 (Ind. Tax Ct. 2008) (explaining that any factual findings made by the DLGF must be supported by substantial evidence).

## C.

In its final determination, the DLGF provided yet another alternative reason for denying Union Township's first excess levy appeal. Indeed, the DLGF stated that:

> even if [Union] Township had supplied the required data and demonstrated that an error occurred, [it] failed to request relief from

---

[7] Even if the St. Joseph County Auditor made a reduction under the guise of Indiana Code § 6-1.1-17-0.5 and Indiana Code § 6-1.1-17-1(d)-(f), the validity of such reduction is questionable. <u>See</u> I.C. § 6-1.1-17-0.5(e) (2010) (amended 2012) (indicating that the amount of the reduction may not exceed 2% of the net assessed valuation for a particular year).

10

the [DLGF] with sufficient specificity. The Township requested "an Order from the [DLGF] correcting the error in the [net assessed valuation] . . . by increasing the current [net assessed valuation] by at least $40,000,000.00, and by allowing a levy for 2012 payable 2013 sufficient to make up for the cumulative effect of the errors." The Department cannot competently grant appropriate relief without specificity from [Union Township] as to the exact fiscal consequences of the alleged error.

(Cert. Admin. R. at 72.) The Court does not find this argument persuasive.

Here, it is abundantly clear what relief Union Township seeks: it wants to recoup the $51,992 in property tax revenue it was unable to collect in 2011 as a result of the $40 million discrepancy. (See Cert. Admin. R. at 1-2, 14-16.) Consequently, the DLGF erred in denying Union Township's first excess levy appeal on the basis that its request for relief lacked specificity. See Amax Inc. v. State Bd. of Tax Comm'rs, 552 N.E.2d 850, 852 (Ind. Tax Ct.1990) (explaining that an agency's final determination is not supported by the evidence if the reviewing court determines that a reasonable mind would not accept the evidence contained in the administrative record as adequate to support the conclusion at issue).

## II.

The sole reason the DLGF denied Union Township's second excess levy appeal was because in presenting its appeal package, Union Township failed to provide it with the actual County Forms 127CER and 17TC. (See Cert. Admin. R. at 73-74 (explaining that while Union Township provided it with the information purportedly contained on those reports, it "relies only on the actual county reports to ensure that [the property tax revenue shortfall] calculations are based on accurate and official data"), 119.) (But see Pet'r Br. at 17; Cert. Admin. R. at 99-101, 120-21; Oral Arg. Tr. at 22, 24-25 (all demonstrating that Union Township maintains that it did provide the DLGF with the actual forms completed

11

by St. Joseph County).)  The Court, however, need not determine today whether the DLGF erred in denying Union Township relief for this stated reason.

The basis for Union Township's second excess levy appeal was that, again, the alleged $40 million error caused a property tax revenue shortfall in 2011.   (See Cert. Admin. R. at 24, 26-27.)  To the extent that both Union Township's first and second excess levy appeals intersect at the question of whether a $40 million error gave rise to a property tax revenue shortfall, the DLGF – not the Tax Court – is the appropriate finder of fact.

### CONCLUSION

For the above-stated reasons, the Court REVERSES the final determinations of the DLGF.  The matter is REMANDED to the DLGF so that it may determine whether an error caused the $40 million discrepancy between the net assessed valuation used to certify Union Township's 2011 budget and the net assessed valuation the St. Joseph County Auditor used in issuing the property tax bills related to that budget.  If an error did in fact occur, the DLGF shall order "[a] correction . . . to be applied to [Union Township's] levy limitations, rate, and levy for the ensuing calendar year to offset the cumulative effect that the error caused[.]"  See IND. CODE § 6-1.1-18.5-14(b) (2015).

As an aside, the Court notes that this case demonstrates yet another instance where infirmities in the DLGF's fact-finding process have hindered the Tax Court's review of the final determination and certified administrative record.  See also, e.g., City of Greenfield v. Indiana Dep't of Local Gov't Fin., 22 N.E.3d 887, 892 (Ind. Tax Ct. 2014); Gary Cmty. Sch. Corp. v. Indiana Dep't of Local Gov't Fin., 15 N.E.3d 1149, 1150 n.3 (Ind. Tax Ct. 2014).  The Court strongly encourages the DLGF to correct these infirmities so that its adjudicatory process can develop all the relevant facts and legal arguments for

12

possible review by the Court.